H. B. INVESTMENT & DEVELOPMENT, INC., *et al.*, Plaintiffs-Appellants, *v.* LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 76-708

Opinion filed April 7, 1977.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Robert R. Retke, and Jennifer S. Duncan, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court in an administrative review action which affirmed a 30-day suspension of a retail liquor license. They contend that the findings are contrary to the manifest weight of the evidence and that the suspension is "unconscionable" and should be overturned.

Plaintiffs were notified by the Commissioner to appear at a hearing for the revocation of its license on charges that plaintiff H. B. Investment & Development, Inc., owner of the Tap Root Pub, through plaintiff, Harley A. Budd, its president, (1) "knowingly possessed unregistered firearms"

on the licensed premises contrary to chapter 11.1—1 of the Municipal Code of Chicago,[1] (2) "knowingly discharged a firearm within the city" contrary to chapter 193—29 of the Municipal Code of Chicago,[2] and (3) "knowingly committed acts of reckless conduct by discharging a firearm within the licensed premises" contrary to section 12—5 of the Criminal Code of 1961.[3] Ill. Rev. Stat. 1975, ch. 38, par. 12—5.

The following pertinent evidence was adduced at the hearing.

*For the City:*
*Phillip Rogers*
On February 13, 1975, he was employed as nightwatchman at the Tap Root Pub at 634-638 West Willow Street. When he arrived for work at 1 a.m. Budd was present. At 3 a.m., Ada Rivera, a neighbor, arrived at the Pub to use the telephone. At approximately 7 a.m. Budd "accidentally discharged a firearm in his pocket. Shot himself in the leg." Although his leg was bleeding, Budd refused to go to the hospital. At approximately 8 a.m. Budd discharged two pistols into the bar. One pistol was a Smith and Wesson snubnose .38 and the other was a World War II P.38. Budd then threw barstools over the bar, and lit napkins and threw them into open liquor bottles. Budd forced him to sit at the bar and would not allow him to call the police. He told Budd that he would look out back to see if anyone was there and then ran to the fire department's station at Larrabee and Armitage to report the fire.

On cross-examination, over the City's objection, he stated that he was fired by Budd in March 1975. However, he denied that he was fired for stealing. He admitted that the building suffered only minor fire damage and that there were several operating telephones on the premises.

*Officer Michael O'Brien, Chicago Police Department*
When he arrived at the Pub that morning smoke was pouring through apertures in the door. He broke down the door and discovered Budd, unconscious, and Rivera, semiconscious, on the floor next to him. The Fire Department arrived and put out a fire near the bar. He found a Walther P.38 and several cartridges on the floor. Although he did not personally

---
[1] Chapter 11.1—1 provides in pertinent part:
"All firearms located in the City of Chicago shall be registered in accordance with the provisions of this Chapter."
[2] Chapter 193—29 provides in pertinent part:
"No person shall fire or discharge any gun, pistol, or other firearm within the city, except upon premises used by a duly licensed shooting gallery, gun club, or rifle club, or in accordance with the provisions of section 193—32 of this Code."
[3] Section 12—5 provides in pertinent part:
"A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful."

examine the City's gun registration files, he did ascertain over the telephone that the Walther P.38 was not registered.

*Harley A. Budd for H. B. Investment & Development, Inc.*

He admitted being in the Pub and having in his possession an unregistered firearm which he had recently purchased. He denied knowingly shooting himself, or discharging a pistol inside the Pub, or setting fire to the premises. He suffered from asthma and took medication which when combined with alcohol resulted in his being "knocked out." He took his medication and had a few drinks the prior evening, February 12, 1975, and again on February 13, 1975, at 7:30 a.m. During the early morning hours of February 13 he took inventory with Rogers. Ada Rivera arrived at 3 a.m. There were five telephones at the Pub and several residences and a call box along the route to the fire station. About $20 worth of fire damage was caused to the Pub.

After both sides rested, the Commissioner found that the corporation, by and through its president, had violated all three charges and suspended plaintiff's license for 30 days.

Following an administrative appeal and hearing, the License Appeal Commission sustained the findings and suspension entered by the Commissioner and denied plaintiffs' petition for rehearing.

Plaintiffs then filed this action for administrative review in the circuit court pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) The trial court found that there was sufficient evidence to justify the 30-day suspension and affirmed the decision against plaintiffs.

OPINION

■■ Plaintiffs contend the findings are against the manifest weight of the evidence. They argue that the City's evidence failed to prove Harley Budd *knowingly* committed the acts charged. If an ordinance forbids the doing of an act and makes its commission unlawful without regard to a particular mental state, proof of mental state is unnecessary. (*Tice v. License Appeal Com.* (1971), 3 Ill. App. 3d 125, 278 N.E.2d 540 (abstract).) Here, section 11.1—1 requires only that "all firearms located in the City of Chicago shall be registered * * *" and section 193—29 requires only that "No person shall fire or discharge any gun, pistol or other firearm within the City." Because neither city ordinance requires that the person charged act with knowledge, we reject plaintiffs' initial contention as to the findings on possession of an unregistered firearm and discharging the firearm.

However, plaintiffs through Budd, were also found to have violated section 12—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38,

par. 12—5) by committing acts of reckless conduct. Although section 12—5 does not require that the person act with the greater mental state of knowledge, thus making plaintiffs' argument that the State failed to prove knowledge inapplicable, it does require the lesser mental state of recklessness. Consequently, because proof of this mental state was required we do not believe the finding on the reckless conduct violation can be upheld under the rationale of *Tice v. License Appeal Com.* (1971), 3 Ill. App. 3d 125, 278 N.E.2d 540 (abstract).

■■ Nonetheless, when we review the evidence presented and apply the statutory presumption that the findings of the agency on questions of fact are prima facie correct (Ill. Rev. Stat. 1975, ch. 110, par. 274) we believe plaintiffs committed acts of reckless conduct. A person is reckless when he acts with a conscious disregard of a substantial and unjustifiable risk amounting to a gross deviation from reasonable standards of conduct. (Ill. Rev. Stat. 1975, ch. 38, par. 4—6.) Here, the evidence showed that Budd fired shots into the bar and set a fire which required the services of the Fire Department. Plaintiffs' argument that the Pub was not open to the public does not belie the danger which the shots and the fire posed to the bodily safety of Rogers and Rivera. The findings on the charge of reckless conduct were not against the manifest weight of the evidence.

Plaintiffs also contend the 30-day suspension is "unconscionable" and should be overturned. They argue that because the incidents occurred after hours, because Budd "was unaware of what he was doing at the time," and because no additional charges have been filed against them since this incident, the suspension should be eliminated or reduced.

■■ The local liquor control commissioner may revoke or suspend a license for violation of any valid city ordinance. (Ill. Rev. Stat. 1975, ch. 43, par. 149.) In this case, the Commissioner found plaintiffs had committed three violations, but in his discretion chose only to suspend plaintiff's license and not to revoke it. (*Tice v. License Appeal Com.* (1971), 3 Ill. App. 3d 125, 278 N.E.2d 540 (abstract); *Daley v. Kilbourn Club, Inc.* (1965), 64 Ill. App. 2d 235, 211 N.E.2d 778.) Based upon the evidence presented we cannot say the Commissioner abused his discretion by merely suspending plaintiff's license for 30 days.

The judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.