*In re* D.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Deanthony B., Respondent-Appellant).

Third District    No. 3—00—0442

Opinion filed March 15, 2001.

Edward P. Graham, of Law Offices of Edward P. Graham, of Naperville, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The respondent, Deanthony B., was found to be an unfit parent for, among other reasons, his repeated incarceration which prevented him from performing his parental responsibilities. After a best interest hearing, his parental rights to the minor, D.P., were terminated.

On appeal, the respondent urges this court to declare section 1(D)(s) of the Adoption Act (Adoption Act) (750 ILCS 50/1(D)(s) (West 1998)) unconstitutional and reverse the trial court's decision. We affirm.

## FACTS

D.P. was born on October 2, 1996. The State filed a petition on June 3, 1999, alleging neglect by D.P.'s mother. The respondent was served with the petition. A hearing was held on August 11, 1999. The respondent was present. At the conclusion of the neglect hearing, the trial court found that D.P. was abandoned and that her environment was injurious to her welfare and adjudicated her neglected.

On September 29, the State filed a motion to terminate parental rights claiming that D.P.'s mother and the respondent failed to maintain a reasonable degree of interest, concern, and responsibility for D.P. or to make reasonable efforts to correct the conditions for the removal of D.P. or to make reasonable progress toward her return within nine months of adjudication. Four months later, the State amended the motion to include an allegation that the respondent's parental rights should be terminated due to his repeated incarceration. The respondent was served with notice of both motions and was present at the fitness hearing.

At the hearing, the State presented certified copies of the respondent's convictions. The convictions showed that the respondent had served two terms of imprisonment since D.P.'s birth. The respondent admitted that he pled guilty to possession of a firearm in November 1996 and was sentenced to 30 months' probation. In March 1997, he pled guilty to possession of a stolen motor vehicle and was sentenced to a term of three years' imprisonment. He was released in February of 1998. At the time of the hearing, the respondent was serving a 12-year sentence in the Department of Corrections for armed robbery. His projected parole date was November 28, 2010. The respondent testified that if he received credit for good behavior, he might be eligible for early parole in 2004.

The respondent further testified that he did not know he was D.P.'s father until August of 1999. After the respondent realized he was D.P.'s father, he wrote to her four or five times and spoke with her on the telephone. On one occasion, D.P.'s foster mother took D.P. to visit the respondent in prison. The respondent also wrote to D.P.'s caseworker inquiring about D.P.'s well-being. As of the hearing, the respondent had not sent D.P. child support. He admitted that his effort to financially support D.P. was limited because of his incarceration.

The trial court found that the respondent failed to make reasonable efforts to correct the conditions that were the basis for the re-

moval of the child or to make reasonable progress toward the return of the child within nine months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1998)). It also concluded that the respondent was unfit because he was incarcerated at the time the motion to terminate was filed and had been repeatedly incarcerated as a result of criminal convictions (750 ILCS 50/1(D)(s) (West 1998)). A best interest hearing was held, and the respondent's parental rights were terminated. The respondent appeals.

## ANALYSIS

Among other factors, the defendant was found to be unfit pursuant to section 1(D)(s) of the Adoption Act because he had been continually incarcerated. On appeal, the respondent does not argue that the evidence failed to establish that he had been repeatedly incarcerated or that such incarceration prevented him from completing his parental responsibilities. Rather, he maintains that section 1(D)(s) is unconstitutional.

■ Section 1(D)(s) of the Adoption Act provides that the State may prove a parent unfit if:

> "[T]he parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 1998).

Generally, statutes are presumed to be constitutional, and any doubts are resolved in favor of the legislation's validity. *In re A.S.B.*, 293 Ill. App. 3d 836, 688 N.E.2d 1215 (1997). A statute is unconstitutional if it violates a person's substantive and procedural rights to due process. *Kelley v. Johnson*, 425 U.S. 238, 47 L. Ed. 2d 708, 96 S. Ct. 1440 (1976). To determine if a law violates substantive due process, we must first consider whether the statute impedes upon a fundamental right or discriminates against a suspect class. *A.S.B.*, 293 Ill. App. 3d 836, 688 N.E.2d 1215. If the statute does not affect a fundamental right, we apply the rational basis test to determine its constitutionality. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 703 N.E.2d 1 (1998). To withstand such a test, the statute "need only be rationally related to a legitimate state goal." *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 37, 672 N.E.2d 1178, 1195 (1996). If any set of facts can reasonably be conceived to justify the relationship, the law must be upheld. *A.S.B.*, 293 Ill. App. 3d 836, 688 N.E.2d 1215.

■ In the context of the Adoption Act, whether a fundamental right is at issue depends upon the facts of the particular case. When a parent has never established "a custodial, personal, or financial rela-

tionship" with a child or merely abandons the child, the constitution does not bestow upon him the fundamental right of parenthood. *A.S.B.*, 293 Ill. App. 3d at 847, 688 N.E.2d at 1224. A determination of unfitness may be made regardless of the respondent's efforts or the amount of interest he shows in his daughter's welfare. See *In re M.M.J.*, 313 Ill. App. 3d 352, 728 N.E.2d 1237 (2000).

Here, the respondent was convicted of a crime within weeks of D.P.'s birth and served several months' probation. Four months later, he was convicted of possession of a stolen motor vehicle for which he was imprisoned for 11 months. In April of 1999, he was sentenced to 12 years for armed robbery. He had just begun to serve that sentence when he testified at the fitness hearing. Nothing in the record indicates that the respondent made an attempt to form a relationship with D.P. prior to his 11-month imprisonment. Upon his release, it does not appear that the respondent tried to see D.P., send her cards or gifts, inquire about her well-being, or financially support her in any way. He did not contact D.P.'s custodians until he was notified of the petition alleging neglect in the summer of 1999. Thus, it is clear from the facts of this case that the respondent did not establish a custodial, personal, or financial relationship with D.P. prior to the termination proceedings. Accordingly, the respondent cannot claim to have a fundamental right in the care and custody of D.P. We therefore review the challenged statutory provision under the rational basis test.

Applying the rational relationship standard, we find that the statute is reasonably related to a legitimate state interest. The paramount concern of the Adoption Act is the best interest of the child. *In re B.W.*, 309 Ill. App. 3d 493, 721 N.E.2d 1202 (1999). Terminating a parent's rights when it is in the best interests of a child is a legitimate governmental interest. *A.S.B.*, 293 Ill. App. 3d 836, 688 N.E.2d 1215. It is not in the best interests of a child to preserve a parent's custody when that parent has failed to establish a relationship with the child due to his continued incarceration. Further, the respondent has provided no authority for determining that the provision is not rationally related to a legitimate state goal. Therefore, we conclude that section 1(D)(s) of the Adoption Act does not violate substantive due process.

Further, the statute does not violate notions of procedural due process. Procedural due process requires meaningful notice and the opportunity to be heard. *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 714 N.E.2d 11 (1999). Here, the respondent received notice of the petition alleging neglect and the motion to terminate. He was present at the proceedings in both matters and was represented by an attorney at the hearing on the motion to terminate his parental

rights. Clearly, the defendant was afforded due process prior to his parental rights being discharged. The defendant appears to argue that by allowing the court to declare a parent unfit due to continued incarceration, section 1(D)(s) denied him due process in his criminal case. We do not accept the respondent's contention that he would have defended himself more vigorously in his criminal case had he known that his parental rights would be terminated due to his incarceration. The defendant pled guilty to the offense before he had any knowledge of his parentage to D.P. Hence, any claim that he would have pled not guilty to the charge to protect his rights as a parent lacks merit.

In sum, the respondent does not argue that the court's finding that he was continually incarcerated and that his incarceration prevented him from discharging his parental responsibilities was against the manifest weight of the evidence. Therefore, we affirm the trial court's determination of unfitness on the ground that respondent's continued incarceration prevented him from caring for D.P.

Next, the respondent asserts that reversible error occurred in the trial court's findings of unfitness based on failure to make reasonable efforts and failure to make reasonable progress toward the eventual reunification with D.P. Since we have determined that the respondent was unfit due to his continued incarceration, we need not review the trial court's findings on the remaining grounds of unfitness. *In re J.P.*, 261 Ill. App. 3d 165, 633 N.E.2d 27 (1994) (when multiple allegations of unfitness are made, a finding that any one allegation has been made is sufficient to declare the respondent unfit).

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER, P.J., and LYTTON, J., concur.