ADAM N. STILLO *et al.*, Plaintiffs-Appellants, v. STATE RETIREMENT SYSTEMS, Judges' Retirement System of Illinois, Defendant-Appellee.

First District (6th Division)  No. 1—97—4630

Opinion filed May 21, 1999.—Rehearing denied July 19, 1999.

Stanley H. Jakala, of Berwyn, for appellants.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs, Adam N. Stillo (Stillo) and his wife, Florence F. Stillo, appeal a decision by the Board of Trustees of the Judges' Retirement System of Illinois (the Board) that terminated all of Stillo's pension benefits on the basis of Stillo's conviction and subsequent sentencing on two felony charges arising out of acts committed during his employment as a circuit court judge. Mrs. Stillo received health insurance benefits because of Stillo's membership in the Judges' Retirement Systems of Illinois (the System) and was the primary beneficiary of his pension benefits. The System also terminated her benefits. The circuit court of Cook County denied plaintiffs' petition for administrative review, and this timely appeal followed.

On appeal, plaintiffs first contend that they were entitled to a pre-suspension hearing before their pension benefits were suspended and, second, that their pension benefits should not have been terminated prior to the exhaustion of Stillo's appeal of his criminal conviction. The System's claim for repayment of $4,483.42 paid to Stillo for the period July 11, 1994, to July 31, 1994, has not been raised on appeal or on a cross-appeal. For the reasons set forth below, we affirm the judgment of the circuit court.

## BACKGROUND

In 1964, Stillo was appointed a magistrate for the circuit court of Cook County and became a participant in the System. At the time of his retirement on August 1, 1988, Stillo was serving as a circuit judge

in the criminal division of the circuit court of Cook County. His monthly pension benefit at the time of retirement was in excess of $5,000.

In 1991, a federal grand jury indicted Stillo on charges of racketeering and extortion conspiracy. The charges arose out of bribery and extortion Stillo allegedly engaged in from 1976 to 1987. On July 29, 1993, at the conclusion of a jury trial in the United States District Court for the Northern District of Illinois, Stillo was found guilty on both counts of the indictment. Then, on July 11, 1994, the district court entered judgment on the convictions and sentenced Stillo to four years in prison. See *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995). Stillo appealed to the United States Court of Appeals for the Seventh Circuit, which affirmed the conviction on June 9, 1995. *Stillo*, 57 F.3d 553. The United States Supreme Court subsequently denied Stillo's petition for writ of *certiorari*. *Stillo v. United States*, 516 U.S. 945, 133 L. Ed. 2d 306, 116 S. Ct. 383 (1995).

In a letter to Stillo dated January 19, 1994, Rudy J. Kink, Jr., manager of the System, informed Stillo that, in accordance with Illinois law (40 ILCS 5/18—163 (West 1994)), all benefit payments made to a member or annuitant must cease upon entry of judgment on a conviction and sentencing for a felony when the offense arose out of acts committed during the performance of official duties as a judge. Plaintiffs responded to Kink's letter on July 20, 1994, by filing a complaint for declaratory judgment and injunctive relief, and requesting the court to enjoin any termination of benefits until such time as a "full due process hearing" could be held. On July 26, 1994, Michael L. Mory, executive secretary of the System, notified Stillo that a hearing before the Board had been scheduled for August 26, 1994. The System paid Stillo his benefits through July of 1994 but suspended benefit payments for August 1994. Due to the scheduling of the Board's hearing, the circuit court dismissed Stillo's complaint for declaratory and injunctive relief.

Following the August 26 hearing, the Board entered a decision and order terminating all of plaintiffs' benefits as of July 11, 1994 (the date of sentencing in the district court), and directed the System to take the necessary steps to recover an overpayment of benefits of $4,483.42 for the period of July 11, 1994, through July 31, 1994. The Board's decision was based on section 18—163 of the Illinois Pension Code (the Pension Code), which provides in relevant part: "None of the benefits herein provided shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a judge ***." 40 ILCS 5/18—163 (West 1994). The decision was served on the plaintiffs on September 28, 1994.

The Board found that "conviction of either a state or federal felony, so long as that felony arose out of or in connection with one's employment," is sufficient to cause a forfeiture of pension benefits under the Pension Code. The Board also determined that while it is true that termination of benefits under section 18—163 of the Pension Code should not occur without a prior hearing, a hearing was provided in the instant case on August 26, 1994. Finally, the Board concluded that the System properly terminated plaintiffs' benefits, even though Stillo's appeal from the criminal conviction and sentence was still pending, because both Illinois and federal law state that pronouncement of a sentence constitutes a final judgment in a criminal proceeding. See *People v. Allen*, 71 Ill. 2d 378, 381 (1978); 18 U.S.C. § 3582(b) (1994).

On October 28, 1994, plaintiffs filed a complaint in the circuit court of Cook County seeking administrative review of the Board's decision. Plaintiffs' complaint alleged that the Board's decision was contrary to both the applicable law and the facts of the case for the following reasons: (1) plaintiffs were entitled to notice and an opportunity for a hearing; (2) the System extinguished plaintiffs' property rights in pension benefits; (3) commencement of an appeal from Stillo's criminal conviction stayed termination of the pension benefits; (4) termination of plaintiffs' rights was a violation of due process; and (5) plaintiffs are owed $83,938.22 in previous contributions to the System. The circuit court of Cook County denied this petition for administrative review on November 24, 1997. The instant appeal raises a question of first impression and asks this court to determine whether section 18—163 of the Pension Code requires the Board to hold a hearing before benefits are suspended and, also, whether the System may terminate a participant's benefits before the participant exhausts all appeals from a criminal conviction.

## ANALYSIS

### I. STANDARD OF REVIEW

■ Section 18—164 of the Pension Code provides that judicial review of final decisions of the Board of the retirement system is governed by the provisions of the Administrative Review Law (Review Law) (735 ILCS 5/3—110 (West 1994)). 40 ILCS 5/18—164 (West 1994). Under the Review Law, findings and conclusions of fact shall be held by the reviewing court to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1994). Factual findings and conclusions will not be disturbed on review unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

Conclusions of law by an agency are not entitled to the same deference on review as is accorded to the agency's factual findings and

conclusions. Review of an administrative agency's legal conclusions is *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). Thus, while conclusions of law are not entitled to the same deference on review as is accorded to an agency's factual findings and conclusions, substantial weight and deference are given to an interpretation of a statute by an agency that is charged with administering the statute because an agency makes informed judgments based on its experience and expertise. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

Plaintiffs do not question the merits of the System's decision to terminate benefits under section 18—163 of the Pension Code. Rather, their arguments focus on the Board's conclusion that the System did not violate plaintiffs' due process rights by either suspending benefits before a hearing was held or by terminating benefits prior to resolution of Stillo's appeal from his criminal conviction. We find that the Board's decision was based on legal conclusions and will be reviewed *de novo*.

## II. PROCEDURAL DUE PROCESS

Plaintiffs first contend that the pension and its attendant benefits were improperly suspended in violation of federal and state due process rights. The System, on the other hand, argues that there was no due process violation under the terms of section 18—163 of the Pension Code (40 ILCS 5/18—163 (West 1994)), because notice was provided to plaintiffs that benefits would terminate upon entry of judgment on the conviction and sentence; the System tendered notice to plaintiffs before the benefits were suspended and a hearing was held by the Board before the benefits were terminated. We agree with the System.

### A. Section 18—163 of the Pension Code

■ It is well settled in Illinois that public employee pensions are a matter of contractual right. *Moore v. Board of Trustees of the Sanitary District Employees' & Trustees' Annuity & Benefit Fund*, 157 Ill. App. 3d 158, 163, 510 N.E.2d 87, 91 (1987). However, the state legislature has the power to take action to deter felonious conduct in public employment by affecting the pension rights of public employees convicted of a work-related felony. *Moore*, 157 Ill. App. 3d at 163, 510 N.E.2d at 91. Individuals who have accepted public employment are deemed to have accepted the terms and conditions of pension rights prior to their employment. *Moore*, 157 Ill. App. 3d at 163, 510 N.E.2d at 91.

Section 18—163 of the Pension Code illustrates these principles and provides as follows:

"Felony conviction. None of the benefits herein provided shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a judge.

This section shall not operate to impair any contract or vested right acquired before July 9, 1955 under any law or laws continued in this Article, nor to preclude the right to a refund.

All participants entering service subsequent to July 9, 1955 are deemed to have consented to the provisions of this Section as a condition of participation." 40 ILCS 5/18—163 (West 1994).

The underlying purpose of this felony forfeiture provision is to "discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 513 (1978).

The facts in the record show that Stillo was convicted in federal court on July 29, 1993, and sentenced to serve four years in prison on July 11, 1994. His appeal from the conviction and sentence was denied by the United States Court of Appeals for the Seventh Circuit on June 9, 1995. *United States v. Stillo*, 57 F.3d 553. The record also reflects that Stillo received a letter from the System on January 19, 1994. This letter informed Stillo that his conviction would serve to terminate his retirement benefits. Then, on July 26, 1994, he received another letter from the System. This time the System notified Stillo that a hearing concerning termination of his benefits was scheduled for August 26, 1994. The notice stated that the "focus of this hearing will determine the applicability and effect of Section 18—163 of the Retirement Act as it applies to felony convictions against you as set forth in the sentencing order dated July 11, 1994." Prior to the August 26 hearing, Stillo received his full pension benefits for July 1994, but the pension check for August 1994 was suspended pending the hearing and a final decision by the Board.

It is undisputed in this case that section 18—163 operates to terminate pension benefits for pension participants who are convicted of felonies arising out of acts committed during performance of official duties. 40 ILCS 5/18—163 (West 1994). Therefore, since it is clear that Stillo became a participant after July 9, 1955, the Pension Code terminated the plaintiffs' benefits as of the date his sentence was imposed, July 11, 1994. Accordingly, we proceed to the issue of the notice required when such benefits are suspended and/or terminated.

B. Notice

Plaintiffs contend that the United States Supreme Court's decision in *Mathews* (*Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18,

96 S. Ct. 893 (1976)) required the System to hold a hearing before suspending plaintiffs' benefits for the month of August 1994. We reject this contention.

■ We recognize that it is firmly established in Illinois that administrative proceedings must conform to the constitutional requirements of due process of law. *Wendl v. Moline Police Pension Board*, 96 Ill. App. 3d 482, 486, 421 N.E.2d 584, 587 (1981). While the essence of procedural due process is meaningful notice and meaningful opportunity to be heard (*Wendl*, 96 Ill. App. 3d at 486, 421 N.E.2d at 587; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950)), due process is a flexible concept and specific procedural requirements with respect to notice and opportunity to be heard vary, depending upon the character of the rights affected and the degree of the deprivation. *Wendl*, 96 Ill. App. 3d at 486, 421 N.E.2d at 587. As a result, "some kind of hearing" is required before an owner is "finally" deprived of his or her property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952, 94 S. Ct. 2963, 2975 (1974). This reasoning was extended to benefits that are a matter of statutory entitlement in *Goldberg v. Kelly*, 397 U.S. 254, 261-64, 25 L. Ed. 2d 287, 295-97, 90 S. Ct. 1011, 1016-19 (1970).

Identification of the "specific dictates" of due process requires consideration of three factors: (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional procedures; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional procedural requirement would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

■ First, plaintiffs' interest was the full and uninterrupted receipt of pension benefits. The record reflects that plaintiffs' benefits were paid in full through July 1994 and were only suspended for the month of August 1994 pending the outcome of the August 26 Board hearing. Had the Board concluded after the hearing that benefits should not cease, the benefits would have been reinstated and paid in full, including August 1994. The suspension of benefits occurred only during the month in which the hearing was held and the Board ultimately decided to terminate plaintiffs' benefits. Thus, plaintiffs' interest in receiving benefits was only affected for August 1994, the month in which the Board hearing was held.

Second, the risk of erroneous deprivation is minimal under the Pension Code. Section 18—163 clearly provides that conviction of a felony relating to government service will result in the termination of pension benefits. 40 ILCS 5/18—163 (West 1994). This provision offers

a fair and reliable means of administrating pension benefits. The procedures followed by the System in this case do not support a need for additional procedural safeguards. When the System wrote Stillo in January 1994 and informed him that his benefits would be paid until the date of his sentencing and then cease, the System was operating under the assumption that sentencing would occur in March of 1994. However, Stillo's sentencing was moved to July 11, 1994, and the System continued payment of benefits through the end of July 1994. Then, on July 26, 1994, plaintiffs received notice of the Board's hearing scheduled to determine whether benefit payments would terminate. According to these facts and the procedures the System employed, we find that there was no risk of an erroneous deprivation of plaintiffs' benefits.

Finally, *Mathews* requires us to consider the interests of the public. This factor involves an examination of the relevant fiscal and administrative burdens, and also a determination as to when judicial procedures must be imposed upon administrative action to assure fairness. *Mathews*, 424 U.S. at 347, 47 L. Ed. 2d at 40, 96 S. Ct. at 909. The overriding governmental and public interest in section 18—163 is protecting the fiscal integrity of the public pension system and discouraging illegal activities by public employees. See, *e.g., Kerner*, 72 Ill. 2d at 513. The System's decision to suspend payment of benefits after notice of a scheduled termination hearing was mailed, and only for the month in which the hearing was held, does not violate the public's interest or general notions of fairness.

Plaintiffs further argue that since the Illinois Appellate Court in *Wendl* held that police officers receiving disability pensions retained a property right in pension benefits that could not be terminated without meaningful notice (*Wendl*, 96 Ill. App. 3d at 486-87, 421 N.E.2d at 587), and that in *Moore v. Board of Trustees*, 157 Ill. App. 3d 158, 510 N.E.2d 87 (1987), the appellate court ruled that a Metropolitan Sanitary District employee convicted of a felony connected to his employment had annuity benefits terminated without a hearing, Stillo's pension and its attendant benefits could not be suspended without notice, an opportunity to be heard, or a hearing. Plaintiffs state that *Wendl* and *Moore* require us to find that any notice that the System offered would have only been effective as to dates after a hearing, not before.

We find that neither *Wendl* nor *Moore* requires us to reverse the Board's decision. In *Wendl*, the court ruled that the pension board gave inadequate notice of a hearing where the plaintiffs' disability benefits were terminated. *Wendl*, 96 Ill. App. 3d at 488, 421 N.E.2d at 588. The notice at issue in *Wendl* failed to indicate, or even suggest,

that the Board might possibly terminate the plaintiffs' benefits. *Wendl*, 96 Ill. App. 3d at 488, 421 N.E.2d at 588. In the instant case, however, the notice issued by the System on July 26, 1994, clearly stated that a hearing would be held August 26, 1994, to determine whether benefits would be terminated under section 18—163 of the Pension Code. As a result, plaintiffs had adequate notice as to the purpose of the hearing and, therefore, according to the *Wendl* court's reasoning, the notice was sufficient.

In *Moore*, the Board of Trustees of the Sanitary District Employees' and Trustees' Annuity and Benefit Fund notified the plaintiff (Moore) that his pension benefits had been terminated at a board meeting because of a felony conviction related to performance of his work duties. Moore never received advance notice of this termination. This court ruled that "[i]t is clear as a matter of due process *** that the board erred in not providing Mr. Moore with notice and an opportunity to be heard before the termination of his benefits." *Moore*, 157 Ill. App. 3d at 166, 510 N.E.2d at 93. The court continued by stating that "[i]t is, however, not necessary, as stated above, that the board conduct a full hearing concerning the underlying felony conviction itself." *Moore*, 157 Ill. App. 3d at 166, 510 N.E.2d at 93.

Based on the record before us in the instant case, plaintiffs did receive notice prior to the hearing in which the Board would decide whether their benefits would terminate under the Pension Code. Prior to the hearing regarding termination of benefits, the System merely suspended plaintiffs' benefits for the month of August pending the outcome of the hearing. Unlike in *Moore*, plaintiffs' benefits were not suspended without a hearing, and the System sent notice of the hearing one month in advance. If plaintiffs had prevailed at the hearing, their full benefits would have resumed and they would have received the August payment in full. Thus, plaintiffs had an opportunity to contest the System's decision to terminate benefits on August 26, 1994, and still received benefits through the time when notice was tendered. Accordingly, we decline plaintiffs' invitation to follow *Wendl* and *Moore*.[1]

It is important to note the System does not deny that due process

---

[1]The Stillos' reply brief states that *Wendl* and *Moore* are essential to our analysis because "those decisions hold that pension benefits, being property rights, require the termination of those rights to be based upon cause and cannot be arbitrarily extinguished without a hearing," and "a hearing for termination of such pension benefits is required." As noted in this opinion, the record shows that plaintiffs' benefits were not terminated until *after* the August 26, 1994, hearing.

is a necessary component to the termination of pension benefits, but instead argues that *Kerner v. State Employees' Retirement System*, 53 Ill. App. 3d 747, 368 N.E.2d 1118 (1977), *aff'd*, 72 Ill. 2d 507 (1978), should guide our analysis on this issue. In *Kerner*, ex-Governor Otto Kerner joined the retirement system in 1965. Following his 1968 resignation as Governor to accept appointment as a federal judge, he received pension checks. Then, in April 1973, Kerner was convicted of felonies in federal court. Pursuant to section 14—199 of the Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 14—199), his monthly pension allowances were terminated by the retirement system because of his convictions, and he filed a demand for resumption of benefits in October 1975.[2] The Board denied Kerner's benefits in May 1976, the circuit court reversed the Board, and the appellate court reversed the circuit court and reinstated the Board's decision. *Kerner*, 53 Ill. App. 3d at 755, 368 N.E.2d at 1123-24. Relevant to the instant case, both the appellate court and the supreme court rejected Kerner's claim that he had been denied due process under either the Illinois or United States Constitution by the retirement system's termination of benefits. However, neither case provided any analysis of the due process issue. Therefore, while *Kerner* presents a factually similar case and confirms the statutory authority to terminate benefits, we rely on traditional due process analysis to clarify the standard for due process in pension benefit termination cases.

As noted above, the *Mathews* test for due process does not require that we find the System violated plaintiffs' due process rights. After Stillo's conviction in the district court, the System continued to pay his full retirement benefits. It was only after the district court pronounced Stillo's sentence on July 11, 1994, that the System notified him that it would conduct proceedings devoted to determining whether his benefits would terminate. But before actually terminating the benefits, the System notified Stillo that a termination hearing was scheduled for August 26, 1994, and only the benefit payments for August of 1994 were suspended pending the Board's decision after the hearing. Therefore, we hold that the System may, pursuant to enforcement of section 18—163, suspend benefits pending a hearing on the issue, as long as notice is provided and a hearing is conducted by the Board before finally terminating retirement benefits. This rule does not violate established due process rights and allows for efficient enforcement of the policies set forth in the Pension Code.

---

[2]This statutory provision is almost identical to section 18—163.

## C. Exhaustion of Appeals

■ Next, plaintiffs contend that the System should have been prohibited from extinguishing pension benefits until completion of all appeals from Stillo's criminal conviction. We disagree.

As used in the Pension Code, the phrase "convicted of a felony" has been interpreted to mean the date upon which a court enters judgment and imposes a sentence on the conviction. *Allen*, 71 Ill. 2d at 381; *People ex rel. Wright v. Board of Trustees of the Teachers' Retirement System*, 157 Ill. App. 3d 573, 579, 510 N.E.2d 1283, 1287 (1987).

In *People ex rel. Keenan v. McGuane*, 13 Ill. 2d 520, 523-24 (1958), the Illinois Supreme Court addressed the issue of whether an appeal of a criminal conviction stayed a provision in the Election Code (Ill. Rev. Stat. 1957, ch. 38, par. 587) that stated "[e]very elected office shall become vacant on the happening of *** [h]is conviction of an infamous crime." The court found that the office of Cook County assessor became vacant after the then-assessor's conviction and sentencing on charges of federal tax evasion. *Keenan*, 13 Ill. 2d at 525. The assessor then argued that the pendency of his appeal before the United States Court of Appeals for the Seventh Circuit stayed the finality of his conviction. The supreme court rejected this argument, finding that after a conviction, "the presumption of innocence which, up to that time, had persisted in favor of the defendant, no longer prevails, and that the law thereafter presumes that the proceedings have been regular and that the defendant is guilty." *Keenan*, 13 Ill. 2d at 536. In fact, the court stated that it found "no merit in petitioner's contention that pendency of his appeal stays the finality of his conviction." *Keenan*, 13 Ill. 2d at 537.

Plaintiffs rely on Supreme Court Rule 761(d)(2) in support of their argument that their benefits should not have been extinguished while Stillo appealed his criminal conviction. 134 Ill. 2d R. 761(d)(2). We find that this reliance is misplaced.

Supreme Court Rule 761(d)(2) provides, in part, that when an attorney has been convicted of a crime involving fraud or moral turpitude, a hearing shall be conducted before the hearing board of the ARDC; however, if the attorney has appealed the conviction, the hearing shall be delayed until completion of the appellate process, unless the attorney requests otherwise. 134 Ill. 2d R. 761(d)(2). This rule provides that, if an attorney is convicted of a crime involving fraud or moral turpitude, the administrator of the ARDC shall file a petition with the Illinois Supreme Court alleging relevant facts and requesting that the attorney be suspended from the practice of law. See 134 Ill. 2d R. 761(b). After considering the petition, the supreme court may order a suspension.

Since Rule 761 stays a final ARDC hearing during the appeals process, and plaintiffs' benefits were terminated prior to completion of Stillo's appeal from his criminal conviction, we must decide whether we want to extend application of the procedures employed in ARDC's disciplinary actions to administrative actions involving public employee retirement benefits. We find that the language of section 18—163 does not support expanding the coverage of the reasoning used in Rule 761.

Section 18—163 states in certain terms that any person convicted of any felony related to his service as a judge will lose his pension benefits. 40 ILCS 5/18—163 (West 1996). If we were to apply the procedures set forth in Rule 761, we would nullify the plain language of section 18—163 and call into question the supreme court's well-reasoned decision in *Keenan*. Such drastic action is not warranted. Therefore, we should leave Rule 761 to ARDC's disciplinary matters and follow the clear dictates of the Pension Code. Accordingly, under the Pension Code, the System may proceed to terminate benefits in accordance with due process once the participant has been convicted of a felony and sentenced.[3]

## CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court.

Affirmed.

ZWICK and QUINN, JJ., concur.

---

[3]The Stillos cite *Levine v. Kling*, 123 F.3d 580 (7th Cir. 1990), for the proposition that the System could not proceed with benefit termination procedures until Stillo exhausted his appeals. *Levine* specifically dealt with a person convicted of using interstate commerce to commit murder and his efforts to bring a legal malpractice action against his appellate defense attorney. The seventh circuit held that under Illinois law the client, who had not made a successful collateral attack on his conviction, could not maintain an action for legal malpractice against appellate defense counsel. However, the court made clear that if the client succeeded in getting his conviction overturned, he could bring a new malpractice suit. *Levine*, 123 F.3d at 583. Therefore, *Levine* only supports a conclusion that had Stillo had his conviction reversed by the court of appeals, he could have had his benefits restored. *Levine* stands for nothing more.